IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>  v.<br><br>BRIAN KAMPEL,<br><br>    Defendant | Case No. 20-CR-00084(DLF) |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR MODIFICATION OF PRE-TRIAL RELEASE CONDITIONS

The United States of America, through its counsel the United States Attorney for the District of Columbia, hereby files the Government's Memorandum in Opposition to Defendant's Motion for Modification of Pre-Trial Release Conditions.

### BACKGROUND

In March 2012, Agents working in the Homeland Security Investigations ("HSI") Phoenix, Arizona Office initiated an investigation into a password-protected, fee-based website, identified herein as "Website M,"[1] following an interview with a Website M user ("S1") in connection with a separate child exploitation investigation. S1 allowed HSI agents to assume S1's online identity on Website M and provided agents with S1's username and password.[2] After gaining access to Website M by using S1's user name and login, HSI Phoenix agents determined

---

[1] Law enforcement knows the actual name of Website M. However, the investigation into users of Website M remains ongoing, and public disclosure of Website M's actual name would potentially alert its members to the investigation, likely provoking members to notify other members of the investigation, to flee, and/or to destroy evidence. Accordingly, to preserve the confidentiality and integrity of the ongoing investigation, the actual name and other identifying details of Website M remain undisclosed in this affidavit.

[2] S1 provided SAs with the web address for Website M and S1's login information to Website M but S1 has not provided sufficient information to law enforcement to understand how S1 originally obtained the web address or login information for Website M.

1

that it advertises files of child pornography for purchase. Once logged in as a member, the user sees the names of folders available for purchase, which contain previews or samples of images contained in the folders. As of March 2012, the website advertised that it offered 600,000 images and 400 hours of video. Such images and videos are organized into folders, the contents of which can be accessed after downloading them by purchasing a password. At all times relevant to this investigation, Website M hosted its content on a server physically located outside of the United States.

Throughout HSI's investigation, Website M has typically charged between $40 USD and $110 USD to purchase the password for encrypted archive files containing multiple images and/or videos of child pornography and child erotica. The majority of archive files cost $89 USD.[3] Once downloaded, the user can "decrypt" the selected archive file by entering in the purchased password to reveal multiple images and/or video files. Phoenix HSI Special Agents have made undercover purchases or accessed several archive files available for purchase, which revealed that most of the archive files contained between 500 and 2,000 image and/or video files, the majority of which are child pornography. A member of Website M can select a particular encrypted archive file, download the encrypted files from Website M, and then pay for an encryption password via a third-party payment site.

In September 2017, HSI analyzed U.S. payment processor records and identified individuals who made purchases from Website M. The U.S. payment processor records indicate that an individual using the Master card (credit card) ending in 6175 made a purchase from Website M on or about August 24, 2017. According to the U.S. payment processor records, the

---

[3] A digital archive file is used to store multiple files within a single, compressed file, which can make it easier to store and transmit numerous files at the same time. File extensions associated with digital archive files include ".rar" and ".zip."

email address "thecrow120474@yahoo.com" is the email address to which it sent the auto-generated receipts and passwords for this purchase from Website M. This purchase was associated with the name Flash Script 86. The IP address captured by the payment processing company for this purchase was 108.31.162.195.

In or about December 4, 2018, HSI Special Agents traveled to Moldova, France where they had determined the servers that hosted Website M were located. At this time HSI Agents, with the assistance of French Authorities, obtained a copy of the contents of Website M's servers to include videos and images that were for sale on Website M, as well as information on "member" login user names. The HSI Agents were able to confirm at the time of duplication that the data stored on Website M's servers was recovered and in a format that could be utilized as evidence.

HSI Special Agents reviewed information that was obtained from Website M's servers and located a file folder associated with Flash Script 86. Law enforcement reviewed the contents of this file folder and determined that it contained images that depicted child pornography as described in Title 18 USC 2256(8), to include a prepubescent female being vaginally penetrated by an adult male.

A review of activity logs associated with the access of Website M revealed that the IP Addresses: 96.241.188.51 and 108.31.162.195 were both associated with the access of Website M. The investigation revealed that these IP addresses were both associated with the mobile Internet Service Provider ("ISP") Verizon. Information was received from Verizon via legal process. According to Verizon, the subscriber associated with the IP Address 108.31.162.195 during the dates captured by this investigation, including on August 24, 2017 when the Website M purchase was made, was Brian Kampel ("KAMPEL"), residing at 709 Rock Creek Church

Road NW Washington, DC 20010. Verizon further stated that the IP Address 96.241.188.51 was associated with the same subscriber during the dates captured by this investigation.

Information obtained from a law enforcement source revealed that e-mail address thecrow120474@yahoo.com was directly associated with KAMPEL's personal information, in that December 4, 1974 is KAMPEL's birthday.

On or about September 10, 2019, a federal search and seizure warrant issued by the United States District Court in the District of Columbia was executed at 709 Rock Creek Church Road NW, Unit 2, Washington, DC 20010, KAMPEL's residence.  The warrant authorized the search and seizure of evidence of violations of Title 18, United States Code, Sections 2252(a)(2) and (a)(4)(B), which make it a crime to distribute, receive, possess, and access with intent to view child pornography.

During the execution of the search warrant, after law enforcement explained to KAMPEL and his wife that they worked for HSI's Cyber Division, KAMPEL turned to his wife and stated, "I think I'm getting arrested." Electronic devices were located and seized from the residence pursuant to this search warrant, including a Compaq Presario Laptop (Serial Number L2605989). This Compaq Presario laptop was found by law enforcement officers inside of a room that contained KAMPEL's personal effects.  Law enforcement officers also found a Master Card ending in 6175 in KAMPEL's wallet, which appears to be the same card used to make a purchase from Website M in August of 2017.

KAMPEL was read his *Miranda* warnings and he agreed to speak with law enforcement officers.  KAMPEL stated he had been living at 709 Rock Creek Church Road NW, Unit 2, Washington, DC 20010 for approximately 3 ½ years.  KAMPEL admitted that he knew what child pornography was, and defined it as involving individuals under the age of 18 that were

engaged in a sexual act or showing their private parts. KAMPEL stated that the Computer Forensic Agents would probably find child pornography on his computer(s). KAMPEL also admitted to viewing and downloading files that depicted child pornography via the Internet. KAMPEL stated that some of the files that depicted child pornography would be located on the hard drive of his computer in a "temp file". During the interview, KAMPEL admitted to masturbating when he viewed some of this material. KAMPEL further stated that his preferred age range for the child pornography that he viewed depicted children as young as 12 years old. KAMPEL admitted to using the name thecrow120474 online, including as a username for an older Yahoo e-mail account.

During the interview, KAMPEL stated that the websites he visited online would "re-direct" him to websites that contained child pornography. KAMPEL stated that in addition to Website M allowing individuals to download files, there was also a "forum" section where members of the site would post links to Internet sites that contained child pornography. An example of this would be an individual posting a hyperlink associated with their Dropbox account.[4] This hyperlink would give the user access to certain files contained within the Dropbox account. When interviewed by law enforcement, KAMPEL admitted to making 1 or 2 purchases from Website M. However, the investigation has revealed that KAMPEL accessed this website at least two hundred times. KAMPEL informed law enforcement that he would engage in this criminal conduct when his wife is at work or at the gym. He explained that he has a "very compulsive nature" and likened searching for, viewing, and downloading child sexual abuse material to smoking cigarettes because, according to KAMPEL, it's addictive.

---

[4] Dropbox is an Internet based cloud storage company that allows individuals to store files, to include images/videos.

KAMPEL's Compaq Presario Laptop was forensically analyzed. According to information provided by the HSI Computer Forensic Agent, a total of 1,060 files depicting child pornography were located in allocated space on KAMPEL's Compaq Presario laptop. The below described files were forensically located within the file path: "\Users\Brian Kampel\AppData\Local\temp":

a. Yngirl04.avi: This is a video file that is approximately 2.15 minutes in length. This video appears to have been produced using a webcam. The video depicts a prepubescent female. The prepubescent female removes her pajama pants and exposes her vagina. The prepubescent female uses her fingers to spread apart her vagina.

b. Ocean's Little Sister-1.avi: This is a video file that is approximately 2.15 minutes in length. This video is either identical to or is significantly similar to the video described above.

c. D9f632e32142bc45.jpg: This is an image file. This image depicts a prepubescent female placing her mouth on an adult man's penis.

d. $RYT8KZJ.mp4: This is a video file that is approximately 46 seconds in length. This video depicts an adult male raping a prepubescent child. The adult man places his mouth on the little girl's vagina.

e. Private-1.avi: This is a video file that is approximately 1.19 minutes in length. This file appears to have been written to the computer in or about September 2011. The video depicts an infant/toddler being anally raped by an adult male.

f. Mellony 10 y/o sucking dick.avi: This file is approximately 29 seconds in length. The file appears to have been written to the computer in or about November 2016. This file depicts a prepubescent female placing her mouth on an adult man's penis.

Additionally, further analysis of Mozilla Firefox browser history indicates that the following websites had been accessed on this laptop computer:

a. https://alte.vidfun.fun/index.php in or about July 2019.  After accessing this site, the user was redirected to a site titled, "No-Virgin Kids Site."  The user accessed this site four times.

b. https://odasia.site/ was accessed in or about June 2019.  After accessing this site, the user was redirected to this site titled, "pedo REaDy".

c. https://(Web address for Website M) was accessed in or about October 2018.  It appears that the user followed a link to a webpage titled, "Pedo Community V.1.0 is closed – girls".  The user accessed this particular webpage two hundred and forty-six times.

Also found on KAMPEL's Compaq Presario laptop are cached images of suspected child pornography.  These cached images indicate that they were viewed on the internet using the Mozilla Firefox browser by the user on this computer.  Cache files are saved when the user visits a webpage and are stored under each user's Mozilla Firefox profile directory.  The below described images were saved by Mozilla Firefox when the user of the computer viewed the file.  This information was found within the file path: \Users\BrianKampel\AppData\local\mozilla\firefox\profiles\xtyalbb9.default\ AppData cache 2\Entries.  Examples of the images that were saved under the above profile are:

a. HTTPS://youplay.online/2441202187/video/watch/5.jpg which was viewed on or about September 8, 2019.  This file depicts a prepubescent female, fully nude.  An adult male penetrates the prepubescent female's anus with his penis.

b. HTTPS://cdn.mnmlsv.net/e9a297b184c6d75e9f4de9f4de44b63d4edfc.gif which was viewed on or about September 8, 2019.  This file depicts a male infant/toddler who is

7

fully nude, with a black mask over his eyes. An adult male ejaculates onto the infant/toddler's chest and face.

c. HTTPS://cdn.mnmlsv.net/yGSuP7.gif. This file was viewed on or about September 8, 2019. This file depicts an infant, fully nude, laying on its stomach. An adult female is spreading apart the infant's buttocks. An adult male penetrates the infant's anus with his penis.

KAMPEL's Compaq Presario laptop also had VLC media player installed on it. This software can be downloaded for free on the Internet and can be used to view/play video files. Found within the VLC media player in the "recently opened media" folder was a video. The file path for this video is "Users\Brian Kampel\AppData\Local\temp." The file name is !!! New Pthc – 11yo Evelyn 2010 – part 3!!!.avi. This video file is approximately 1.31 minutes in length and depicts a prepubescent female placing her mouth on an adult male's penis.

Lastly, located within the Recycling bin on KAMPEL's Compaq Presario laptop were numerous files that contained child pornography. Due to the fact that these files were in the Recycling bin, the file had to have been on the computer and then either moved to the recycling bin or deleted. Although these files are in the recycling bin, they are still located in allocated space. This means they are still accessible to the user and can be moved from the recycling bin and placed anywhere else on the laptop. A description of some of the files located within the recycling bin follows:

a. $RSY38OD.avi: This is a video file that depicts a prepubescent female, fully nude, who has her legs tied apart with a strap or other material. An adult male penetrates the prepubescent female anally with his penis, and then ejaculates onto the prepubescent female's chest.

b. $RHOXJ6V.jpg: This is an image file that depicts a prepubescent female, fully nude, sitting on the floor. The prepubescent female has her legs spread open. The child is positioned in such a way, and the camera is centered in such a way that the focal point of this image is the child's vagina.

## ARGUMENT

The Defendant has been charged by Information with Accessing Child Pornography with Intent to View in violation of Title 18 U.S.C. § 2252(a)(4)(B). He first appeared before the Court on August 5, 2020. This Court fashioned conditions of release that, given the nature of this Defendant's criminal offenses, are necessary to assure the safety of any other person and the community. This includes placing the Defendant in the custody of his mother, who has agreed to assume supervision of the Defendant, including ensuring that the Defendant is only using electronic devices for work purposes during work hours. *See* 18 U.S.C. § 3142(c)(B)(i). Additionally, in light of the fact that the Defendant's criminal offenses involve minor victims, this Court also imposed electronic monitoring. Now, less than a month after the Court fashioned these conditions, the Defendant seeks to modify these conditions and asks that he be moved to a curfew instead of home confinement at his mother's home, and that the electronic monitoring be terminated. The Defendant's justification for these modifications appears to be that he has fully complied with the Court's conditions of release for less than a month. Even assuming that the Defendant has been compliant with the Court's conditions of release, the Defendant's compliance with his conditions, however, does not justify the modifications that he seeks. Rather, the conditions of release that were imposed on August 5, 2020 are necessary to protect public safety – that is, to ensure that the Defendant does not have unmonitored access to electronic devices and the internet, lest he re-offend. From the Government's perspective, the

conditions of release are working as intended. Thus, the Defendant has improved not in spite of but because of the conditions of release. To allow the Defendant to modify the conditions of his release merely because he has complied for a few weeks undermines the integrity of these conditions and all of the Court's consideration that went into factoring them.

In other contexts, courts have found that mere compliance with conditions of release is not enough to warrant modification or early termination of supervised release. This is because the "[m]odel prison conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination." *United States v. McKay*, 352 F. Supp. 2d 359 (E.D.N.Y. 2005). *See also United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) (finding that while the defendant's "post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule."); *United States v. Weintraub,* 371 F.Supp.2d 164, 167 (D.Conn.2005) (noting that "[a]lthough [the defendant's] ongoing and full compliance with all conditions of supervised release, including payment of the fine and restitution, is commendable, in the end that is what is required of all criminal defendants and is not a basis for early termination of his supervised release"); *United States v. Caruso,* 241 F.Supp.2d 466, 469 (D.N.J.2003) (ruling that "mere compliance with the terms of probation or supervised release is what is expected of probationers, and without more, is insufficient to justify early termination").

The Defendant's proposed modifications would leave allow the Defendant to spend hours every day, unsupervised, with unfettered access to electronic devices and the Internet. This is particularly troubling since that was the situation the Defendant found himself in prior to his arrest, where he would use the windows of time when he was home alone, and his wife was at work, to use his phone and laptop to access the Internet and browse websites that advertise the

sexual exploitation of young children. There can be no doubt that the Sexual Exploitation of Children, and the receipt and possession of child sex abuse material, presents a serious danger to the community, because it causes severe mental, emotional, and physical trauma to the countless number of children who are victimized by offenders, like the Defendant and others, with a demonstrated sexual interest in children. Individuals, like the Defendant, who are consumers of this material, furthers the demand for new material depicting the graphic, sexual exploitation and abuse of defenseless children.

What is troubling about the Defendant's motion is that it seems to minimize the serious nature of his course of criminal conduct. That child pornography offenses are serious is a fact noted by the Supreme Court. At least as early as the landmark decision, New York v. Ferber, 458 U.S. 747 (1982), the Supreme Court referenced numerous research materials detailing the harm to children as a result of the production and trafficking of child pornography.

> "[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981). *See also* Child Exploitation 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions"); Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation, 12 U.Mich.J. Law Reform 295, 301(1979)(interview with child psychiatrist) ("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"). 458 U.S. 758, n.9.

> Moreover, as the Eastern District of New York has found:
>
> ...the issue is not only defendant's potential abuse of children and his interaction with children if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006). The *Reiner* court further found that there were no conditions in that case that could reasonably assure the safety of the community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..." Id. at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (S.D.W.Va. April 29, 2008)(unpublished)(noting the ease of accessing the internet by means of various devices and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined to his home and electronically monitored, defendant would not be prevented from obtaining the means to access the internet and attempting again to obtain child pornography and in this poses a danger to children and the community"); *United States v. Doyle,* 2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering that pornographic images of children are widely available on the internet and can be easily accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011).

The Defendant's charged criminal conduct, which spans nearly eight years, emphasizes that he has been, and continues to be, a danger to some of the most vulnerable members of our community: children. Given this risk, the Court's conditions of release, as imposed on August 5, 2020, are necessary to protect the safety of any other person and the community. Removing conditions of electronic monitoring and home confinement leaves the Court with no assurances

as to the Defendant's whereabouts, or his use of electronic devices that are known to be in his possession.  As such, the Defendant's motion should be denied.

## CONCLUSION

Accordingly, the government respectfully requests that this Court deny Defendant's Motion to Modify the Pre-Trial Conditions of Release.

Dated: August 31, 2020

Respectfully submitted,

MICHAEL SHERWIN
Acting United States Attorney
N.Y. Bar No. 4444188


 /s/   *Amy E. Larson*
Amy E. Larson, N.Y. Bar Number 4108221
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-7863
Email: Amy.Larson2@usdoj.gov